IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:15-00001-02

COTY S. RICHARDSON
  also known as "Pun"

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Coty Richardson's Motion to Suppress (ECF No. 108). Defendant argues that two allegedly warrantless searches of 403 Homestead Avenue violated his Fourth Amendment rights and requests suppression of evidence seized during those searches. The Government timely filed a response to Defendant's motion (ECF No. 123), and on July 1, 2015, the Court heard further evidence and argument on the pending motion. Consistent with this Court's ruling from the bench, Defendant's motion to suppress is **DENIED**.

**I.   FACTUAL BACKGROUND**

On December 6, 2014, United States Postal Inspector Josh Mehall was alerted to a suspicious parcel, sent from Michigan and to be delivered to Defendant's residence at 403 Homestead Avenue, Huntington, WV. That alert was consistent with previous reports that heroin was being delivered to Defendant's address via mail delivery. Upon inspection, PI Mehall noted that the names listed for both the return and destination addresses appeared to be fictitious.

On December 8, 2014, at PI Mehall's request, West Virginia State Police Trooper Kevin Williams brought a trained narcotic detection canine to inspect the package. Trooper Williams' canine positively alerted to the package, indicating the presence of a controlled substance odor.

The officers then searched the parcel and discovered approximately 230 grams of heroin concealed in a stuffed teddy bear. The teddy bear was then repackaged with a reduced quantity of heroin, and the officers prepared for a controlled delivery of the package to Defendant's residence.

In doing so, Trooper Williams testified that he presented an "Affidavit and Complaint for Search Warrant" to Cabell County Magistrate Darrell Black. Gov. Ex. 1. The search warrant requested authorization to search Defendant's residence and to recover the teddy bear after the controlled delivery. Magistrate Black offered testimony explaining his standard process for reviewing search warrants, which notably included reading and initialing every page only after finding probable cause to support issuance of the warrant and swearing the affiant to its contents. Consistent with that practice, every page of the Affidavit and Complaint for Search Warrant bears the initials of both Magistrate Black and Trooper Williams.

Officers then performed the controlled delivery and executed the first search warrant. In doing so, officer observed multiple firearms and a variety of items associated with the packaging and distribution of heroin. Finding such items, Trooper Williams reported to the Court that he returned to Magistrate Black and presented a second "Affidavit and Complaint for Search Warrant" seeking authorization to conduct a further search of Defendant's residence. Gov. Ex. 2. Magistrate Black again initialed each page of the affidavit and complaint, suggesting—according to his usual custom or habit—that Magistrate Black indeed found probable cause to support issuance of the second search warrant. Officers then executed a second search of 403 Homestead.

After execution of the search warrants, Trooper Williams made returns to the Cabell County Magistrate Court, but returned only the two "Affidavit and Complaint for Search Warrant" and not the signed search warrants themselves. Because the Government is unable to account for

the original signed search warrants, Defendant now moves to suppress items seized during both searches.

## II. APPLICABLE LAW

"[T]he Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution." *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994). The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." That clause is understood to require that warrants: "(1) be issued by a neutral and detached magistrate; (2) contain a particular description of the place to be searched and the persons or things to be seized; and (3) be based upon probable cause supported by oath or affirmation." *United States v. Henry*, 931 F.Supp. 452, 454 (S.D. W.Va. 1996) (citing *Clyburn*, 24 F.3d at 617). Though the particularity requirement must be satisfied by the warrant rather than the application, a warrant may include such supporting documents if the warrant "uses appropriate words of incorporation, and if the supporting document[s] accompan[y] the warrant." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

It appears that the Fourth Circuit has not had an opportunity to squarely address the appropriate standard for searches involving a lost warrant. In an unpublished opinion, the Fourth Circuit concluded that the admission of evidence seized involving a lost warrant resulted in only harmless error. *United States v. Watts*, 453 Fed. Appx. 309, 313 (4th Cir. 2011). In reaching that conclusion, the court cited approvingly to an Eleventh Circuit decision holding that "when a warrant is not in evidence at a suppression hearing, a prosecutor must prove, by a preponderance of the evidence, the missing search warrant's *exact* language describing the place to be searched and the persons or items to be seized." *United States v. Pratt*, 438 F.3d 1264 (11th Cir. 2006).

Defendant argues instead for a clear and convincing evidentiary standard, but provides no legal support for that heightened standard. However, as discussed below, the Court is satisfied that the Government has met its burden under either evidentiary standard.

### III.  ANALYSIS

Here, the Government is unable to produce the search warrants, but has entered items into evidence that effectively prove the exact language describing the places to be searched and the persons or items to be seized. First, supported by the testimony of both Magistrate Black and Trooper Williams, the Government provided the Affidavit and Complaint for both search warrants. *See* Gov. Exs. 1 and 2. These materials represented the identical attachments to the warrants, and those attachments sufficiently described the location to be search and the items to be seized. *Id.* In addition, Trooper Williams provided unexecuted copies of the original search warrants printed from his files. *See* Gov. Exs. 3 and 4. In short, though we do not have the single page search warrants, there is clear and convincing evidence of the attachments constituting the substance of the search warrants.

Admittedly, the practice or inattention that led to the lost search warrants here is unfortunate and well short of ideal. However, that less than ideal practice does not amount to a constitutional violation. To the contrary, the officers made appropriate efforts to ensure that a neutral and detached magistrate made an independent probable cause finding based on sufficiently particular information. Moreover, even if we were imagine a constitutional violation occurred here, there is no indication of bad faith warranting application of the exclusionary rule.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: July 2, 2015

_____
ROBERT C. CHAMBERS, CHIEF JUDGE